UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT HAYNES, BOB BERKOVATZ, HAROLD FIELDS, RICHARD A. HALEY, CARLOS LOPEZ, and ZALDY R. RALLETA,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO and DOES 1-100,<br><br>Defendants. | No. C 07-00691 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Defendant's Motion for Partial Summary Judgment** |

Plaintiffs Scott Haynes ("Haynes"), Bob Berkovatz ("Berkovatz"), Harold Fields ("Fields"), Richard A. Haley ("Haley"), Carlos Lopez ("Lopez"), and Zaldy Ralleta ("Ralleta") filed the present action against defendant City and County of San Francisco and unnamed defendants Does 1-100. Plaintiffs, each of whom are over the age of forty and were previously employed by the San Francisco Police Department, allege unlawful discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 624 et seq.; Fair Employment and Housing Act ("FEHA"), and California Government Code sections 12940(a) and 12940(d). Plaintiff Haynes also brings a cause of action for retaliation for protected activity in violation of ADEA sections 621–34. Now before the court is defendant's motion for partial summary judgment on all of plaintiff Berkovatz's claims for failure to timely file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") and the Department of Fair Employment and Housing ("DFEH").

BACKGROUND[1]

Berkovatz was employed by defendant on April 29, 2002 when he began instruction at the San Francisco Police Academy. Berkovatz alleges that defendant discriminated against him on the basis of age in violation of the ADEA and the FEHA. Specifically, he contends that the SFPD failed him on the use of force simulation because of his age and that, as a result, he was forced to resign from the San Francisco Police Academy, which he did on October 21, 2002.

While attending the Police Academy, Berkovatz satisfactorily completed every exam of the twenty-five week course save one. The use of force simulation was given on the final day of testing. Berkovatz contends that his performance on the simulation was consistent with his instruction at the Academy and that he achieved the stated objective. Nevertheless, the instructors concluded that he did not perform satisfactorily and failed him. During his exit meeting at the Academy, Berkovatz contends that he was told that he must resign from the SFPD in order to recycle, the term used to mean reentry in a later Academy class. Berkovatz Dec. ¶ 5, 6, 9. Berkovatz later discovered that several of his classmates received failing grades on the use of force simulation that they believed resulted from age discrimination. Id. ¶ 10.

Berkovatz also contends that at least three different SFPD officers convinced him that he was still in line to be recycled. Id. ¶ 8–9, 13, 18. As a result, he believed that he had not been completely discharged from the SFPD. Furthermore, Berkovatz was convinced that complaints—about his discriminatory treatment or the process of recycling—would make it difficult to be recycled. Finally, Berkovatz's communications with the SFPD after his resignation confirmed his belief that he had not been completely terminated. Id. ¶ 15. After his resignation, Berkovatz completed a further psychological exam, updated his background information with the SFPD, and spoke with the SFPD officers responsible for the recycling process. Berkovatz Dec. ¶ 18(h). He states that he was told by the SFPD that he was recycling. Id.

Berkovatz states that he was unaware of any further restrictions on being recycled, including the two-year expiration date of the eligibility list. By contrast, he was told that eligibility lists were frequently extended beyond the two-year expiration date. Berkovatz Dec. ¶ 18(d). In response to his

inquiries, Berkovatz was told that he was not being considered for reentry in January or February 2006. Berkovatz Dec. ¶ 24, 25. In February 2006, in response to a request from a potential employer, the SFPD notified the employer that told Berkovatz was no longer eligible for employment with the SFPD and that he would not be recycled.

Prior to commencing his tenure at the Police Academy, Berkovatz passed all of the qualifying examinations for the Q-2 patrol officer position. See Letter to Berkovatz, July 20, 2001, Rames Dec., Exh. A. As a result, he had been placed on an eligibility list for hiring. The eligibility list is posted at various locations around the City for two years from the date of its adoption. Id. Berkovatz's name was posted on August 6 and 7, 2001. The list was adopted on August 14, 2001 and expired on August 14, 2003.

Berkovatz filed a charge with the EEOC on April 14, 2006 and a charge with the DFEH on April 9, 2006. He received a right to sue notice from both agencies on November 21, 2006 and September 20, 2006, respectively.

DISCUSSION

I.   Statute of Limitations

Defendant contends that Berkovatz's ADEA and FEHA claims must fail because they are time-barred. A plaintiff pursuing an ADEA or an FEHA claim must first exhaust his remedies before filing a civil action. 29 U.S.C. § 624(d). Romano v. Rockwell Int'l, 14 Cal. 4th 479, 492 (1996). The FEHA requires a plaintiff to file an administrative charge with the DFEH within one year of the date of the discrimination. Cal. Gov. Code § 12960(d). The ADEA contains a similar exhaustion requirement with a stricter deadline. A plaintiff must file a complaint with the EEOC on the earlier of 300 days of the unlawful practice or thirty days after receiving a notice of termination proceedings under state law. 29 U.S.C. 626(d)(2). In the instant action, Berkovatz claims that he was forced to resign because of his age. His resignation was effective on October 21, 2002 and his eligibility for a position expired on August 14, 2003. Because he filed administrative charges in April 2006, his claims are time-barred. Berkovatz filed his administrative complaint with the EEOC

3

within 300 days of the February 2006 date on which he was informed that he would not be recycled into another Police Academy class.

Berkovatz advances three arguments to refute this conclusion. First, Berkovatz contends that the statute of limitations did not begin to run until February 2006, when he was informed that he would not be recycled into a later Academy class. Compl. ¶ 18. Second, Berkovatz asserts that the statute should be equitably tolled until he had adequate facts to discover the discrimination. Finally, Berkovatz argues, in the alternative, defendant should be equitably estopped from asserting the statute of limitations because its employees misled defendant into waiting to be recycled.

### A. Discharge Date

Berkovatz's first argument depends on whether his date of discharge was his date of resignation or February 2006, when he received notice that he would not be recycled. In essence, he argues that his employment relationship was not completely terminated by his resignation. Indeed, he contends that his actual termination did not occur until he received the February 2006 letter. Defendant argues that Berkovatz misconstrues the February 2006 letter as an official notice of his termination from the SFPD, when his resignation from the SFPD, or alternatively the expiration of the eligibility list, ended his employment relationship with defendant.

However, the ADEA's filing deadline is triggered by the alleged unlawful employment practice. Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1418 (3d Cir. 1991) ("[I]t is clear in this case that the [discriminatory] performance evaluation was the unlawful practice of which [plaintiff] complains and that his discharge months later was not a continuing violation because it was not itself intentionally discriminatory without regard for the evaluation."). Here, the unlawful practice was the allegedly discriminatory evaluation of the use of force simulation. Berkovatz contends that, like the plaintiff in Colgan, the evaluation was tentative and was not a "employment conclusion subject to appeal." Id. at 1420. He asserts that his resignation, which might otherwise be considered an employment conclusion, was rendered tentative because he was told that he was being recycled. See Smith v. UPS of America, Inc., 65 F.3d 266 (2d Cir. 1995) (noting that discharge occurs when

4

employee receives definite notice of termination). However, the court finds it difficult to believe that Berkovatz was unaware of the conclusive nature of his resignation. He signed a separation report indicating that he was resigning from the SFPD. Rames Dec., Exh. A. On the report, next to the box checked "resignation" he signed a statement indicating that "I hereby freely and voluntarily resign from the above position. I request approval of this resignation . . . with the full understanding that once approved, I may acquire another position in this class only as provided in the rules of the Civil Service Commission [citation to rule governing eligibility list]." Id. Moreover, his belief that he had begun recycling, or the process of reentering another Academy Class, does not alter the legal conclusion that the employment relationship had ended. Indeed, if Berkovatz was recycling, then he was not a current employee but was merely eligible for rehiring without having to reapply. Accordingly, the court rejects plaintiff's first argument.

B. Equitable Estoppel

Berkovatz next invokes the doctrine of equitable estoppel. Equitable estoppel is appropriate where the defendant takes affirmative steps to prevent plaintiff's compliance with the applicable statute of limitations. Holmberg v. Armbrecht, 327 U.S. 392, 396–97 (1946). Equitable estoppel is appropriate where employer wrongfully conceals essential facts. Rhodes v. Guiberson Oil Tools Division, 927 F.2d 876, 878–89 (5th Cir. 1991); Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2001) ("Equitable estoppel . . . focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit.) (citation omitted). The Ninth Circuit has enumerated a "non-exhaustive list of factors" for a finding of equitable estoppel:

> (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

Santa Maria v. Pac. Bell, 202 F.3d 1170, 1176 (9th Cir. 2000) (citing Naton v. Bank of Cal., 649 F.2d 691, 696 (9th Cir. 1981)). Here, Berkovatz states that he relied on various SFPD employees' assertions that he was being recycled. Berkovatz Dec. ¶ 8–9, 13, 18. However reasonable his

5

reliance may have been, he has established only that he believed that he was eligible for re-entry in the Police Academy. His erroneous conclusion that recycling status was equivalent to employment is not attributable to any alleged misrepresentations by defendant. To support his equitable estoppel argument, Berkovatz points only to his failure to comprehend that his resignation terminated his employment relationship with defendant. This will not support such a conclusion. "Fraudulent concealment necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1177 (9th Cir. 2000). There is no evidence that defendant took active steps to prevent Berkovatz from filing his EEOC claim on time. Id. Significantly, there is no evidence that defendant "misrepresented or concealed facts necessary to support a discrimination charge." Rhodes, 927 F.2d at 878–79 (citation omitted). Therefore, the court declines to apply the doctrine of equitable estoppel here.

### C. Equitable Tolling

While equitable estoppel focuses on the actions taken by the employer, a claim for equitable tolling looks at whether the employee was reasonably ignorant of the employer's unlawful conduct. Santa Maria, 202 F.3d at 1178 ("Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claims.") (citation omitted); see also Downs v. Dep't of Water & Power of City of Los Angeles, 58 Cal. App. 4th 1093, 1102 (1997) (tolling applied to California statutes). For instance, one circuit court has permitted equitable tolling of an ADEA claim where the plaintiff had not had information about the discriminatory reasons for her termination until she was replaced by a younger employee. Jones v. Dillard's, Inc., 331 F.3d 1259, 1266 (11th Cir. 2003); see also Rhodes, 927 F.2d at 880–81. Until the employer had hired her replacement, plaintiff had no reason to believe that she was fired for any reason other than the pretextual reasons given, namely the financial health of the company. Jones, 331 F.3d at 1266. In concluding that equitable tolling was appropriate, the Jones court distinguished several other cases in which equitable tolling was not applied. In each of those cases, the court

6

reasoned, the plaintiffs "had sufficient evidence of their age discrimination claims to file an EEOC charge within the limitations period." Id. at 1267. It follows from these cases that Berkovatz must show he was ignorant of the alleged discrimination, and that this ignorance was reasonable.

At the time Berkovatz failed the simulation and resigned from the SFPD, he had no reason to believe that he was the victim of age discrimination. Indeed, in his declaration, he states that his resignation was because he failed the use of force simulation. Berkovatz Dec. ¶¶ 5–7, 9. At the time he believed that the determination of his failure was erroneous and he raised this in his exit interview. Id. ¶ 5. He further states that

> I did not know at the time . . . that others who are younger, who also "failed" this test I supposedly failed, as well as other tests, were given additional opportunities to pass and were permitted to continue with employment where I was not. I did not know until recently, that I was treated less favorably then [sic] them based on age.

Id. ¶ 22. Accordingly, plaintiff has adequately established that he was not aware of any alleged discrimination at the time he was denied employment. Whether his ignorance was reasonable is a different issue.

Berkovatz asserts that he first suspected that he had been unfairly discriminated against because of his age around February 2006. Berkovatz Dep. at 50:9–21. Berkovatz states that in February 2006 he learned definitively that he would not be recycling with the SFPD. However, he fails to describe under what specific circumstances he learned of the allegedly discriminatory treatment of SFPD candidates over forty years old. Here plaintiff's evidence is wanting. He has failed to present evidence from which the court can determine whether his ignorance was reasonable and therefore his failure to comply with the statute of limitations cannot be excused.

On the evidence before the court, therefore, plaintiff has not established that equitable tolling is appropriate. Therefore, the court GRANTS defendant's motion for summary judgment.

II. Request for Judicial Notice

Defendant requests that the court take judicial notice pursuant to Federal Rule of Evidence 201 of three documents: Berkovatz's April 14, 2006 EEOC charge; his April 9, 2006 DFEH charge;

and San Francisco Civil Service Rule 212. Pursuant to Rule 201, the court takes judicial notice of these documents as they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b)(2); see also Hott v. City of San Jose, 92 F. Supp. 2d 996, 998 (N.D. Cal. 2000) (Fogel, J.) (holding the court may take judicial notice of relevant documents).

III.  Evidentiary Objections

Plaintiff presents several objections to the declarations of Richard Marshall and Patricia Rames, submitted in connection with defendant's motion for summary judgment. Of these statements, the court has only considered the Separation Report attached as Exhibit A to the Rames declaration. Plaintiff objects to the separation report on grounds that it is irrelevant because he does not dispute the fact that he resigned. Because the issue of plaintiff's knowledge and constructive notice of the terms of his resignation are relevant to the issues before the court, the court OVERRULES plaintiff's objection to the separation report.

Defendant, in turn, objects on grounds of hearsay and relevancy to numerous statements in Berkovatz's declaration, particularly those in which he states that he was told that he would be recycled. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Certainly, Berkovatz's understanding of whether he would be recycled is relevant to determinations of equitable estoppel and equitable tolling because it has bearing on his understanding of his status and his reliance on actions of defendant. Because the court has considered these statements only for their effect on Berkovatz and not to prove the truth of the matter asserted, they are not inadmissible hearsay. Fed. R. Evid. 801(c). Defendant's objections to Berkovatz's statements that he was told he was recycling are OVERRULED. Defendant presents similar objections to statements in Carlos Lopez's declaration. Because the court has not considered the Lopez declaration, it need not address the objections.

8

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment as to plaintiff Berkovatz is GRANTED and his claims are dismissed in their entirety.

IT IS SO ORDERED.

Dated: January 7, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

# ENDNOTES

1. All facts cited herein are taken from the Complaint unless otherwise noted.